UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD THOMAS STEFANI,

        Plaintiff,                        CIVIL ACTION NO. 12-14418

        v.                               DISTRICT JUDGE JULIAN ABELE COOK, JR.

                                            MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 12, 15)**

Plaintiff Todd Thomas Stefani challenges the Commissioner of Social Security's ("the Commissioner") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 12, 15). Judge Julian Abele Cook referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

### I.     RECOMMENDATION

Because the Administrative Law Judge ("ALJ") failed to explain his reason for rejecting Plaintiff's reported need to lie down, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the Commissioner's decision be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II. DISCUSSION

### A. *Framework for Disability Determinations*

Under the Social Security Act (the "Act"), Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### *B. Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a

zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III. REPORT

#### A. *Administrative Proceedings*

Plaintiff applied for disability insurance benefits on March 29, 2010, alleging a disability onset date of November 26, 2008; the Commissioner denied the application (Tr. 22). Plaintiff appeared with counsel for a hearing before ALJ Melvyn B. Kalt, who considered the case *de novo* (*Id.*). In a written decision, ALJ Kalt found Plaintiff was not disabled (Tr. 22-29). Plaintiff requested an Appeals Council review (Tr. 17-18). On August 16, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-6).

### *B. ALJ Findings*

Plaintiff has a high school education, past relevant work as a cement mason, and was 44 years old on his alleged onset date (Tr. 27). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since his alleged disability onset date in 2008 (Tr. 24).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: diabetes; bilateral knee arthritis, status post multiple knee surgeries; and, low back pain (*Id*.).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (*Id*.).

Between steps three and four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> sedentary work[1] . . . . except that he must be able to alternate between sitting and standing as needed, with no kneeling or squatting, and no use of ladders or scaffolds.

(Tr. 24-25).

At step four, the ALJ found that Plaintiff could not perform any of his past relevant work (Tr. 27).

At step five, the ALJ found Plaintiff was not disabled, because he could perform a significant number of jobs in the national economy (Tr. 27-28).

---

[1] Sedentary work involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

*C. Administrative Record*

### 1. Plaintiff's Hearing Testimony and Statements[2]

Plaintiff is a cement mason (Tr. 36). His work requires him to pour concrete all day; for hours, he must bend over; carry heavy machines – often as much as 100 pounds (though moving the machines requires the efforts of a few people); and, kneel, sometimes for at least 12 hours at a time (Tr. 36-37).

Plaintiff last worked on November 26, 2008; he stopped working because of pain in his knees and legs (Tr. 37). His heavy work has worn out his knees (Tr. 37, 43, 45). He did not file for worker's compensation, but he did apply for unemployment benefits (Tr. 43-44). Since he stopped working, he has worked "a day or two here and there" so he could "keep going," but he no longer finds it possible (Tr. 36, 43-44).

Plaintiff has had multiple knee surgeries (Tr. 37, 43). He rates his knee pain as an 8 out of 10 with medication; without medication, it would likely be over a 10 (Tr. 37). He will eventually require knee replacement surgery, and would seek additional treatment if he had health insurance (Tr. 38-39). His pain is aggravated by kneeling, bending, and standing for too long; it is alleviated when he relaxes, lies down, and applies heat (Tr. 37-38). Plaintiff lies down and puts his legs up a couple times a day, for a couple hours at a time (Tr. 40). He takes Tramadol (pain medication) and Motrin, but experiences side effects: headaches, nausea, diarrhea, occasional trouble concentrating, and drowsiness (Tr. 38, 40). Plaintiff explained that arthritis was also beginning to flare up in his hand: it causes him knuckle pain and limits his grip strength (Tr.42).

---

[2] Plaintiff's testimony before the ALJ reflects his subjective view of his medical condition, abilities, and limitations; it is not a factual finding of the ALJ or this Magistrate Judge.

Plaintiff also has lower back pain, which he rates as a 7 out of 10; he believes it is related to his leg and knee problems (Tr. 43).

Plaintiff can stand and sit for 30 minutes (though, once he stands he needs between 15 and 20 minutes to walk around and shake the ache from his legs before he can sit again); walk one block; and, lift and carry 20 to 30 pounds short distances (Tr. 41-42). He has trouble sleeping because of pain and restlessness in his legs: he averages six hours a night, but often wakes up throughout the night (Tr. 39). He sometimes naps during the day, or falls asleep a few times a day for a few hours at a time due to drowsiness from his medications (Tr. 40).

On an average day, Plaintiff wakes up, takes his pills, checks his blood sugar, and does some light housework; he sits down once his legs hurt (Tr. 39). He lives with his mother (Tr. 40). She grocery shops, and does most of the cooking and cleaning; Plaintiff dusts and vacuums some, though it is a bit hard on his knees (*Id.*). He drives, but cannot drive as far as he used to because his legs ache and cramp (Tr. 41). Plaintiff tries to hunt every year, and is usually driven out to a field where he hunts from a seated position (Tr. 45). A few months before his hearing, he went deer hunting and brought his treating physician, Dr. Monson, venison (Tr. 44-45).

### 2.     Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and past work experience who could perform sedentary work, but required the ability to alternate between sitting and standing at will; could not kneel or squat; and, could not climb ladders or scaffolds (Tr. 46). After the ALJ acknowledged that such an individual would be precluded from performing Plaintiff's past relevant work, the VE testified

that such an individual could perform work as a sorter or bench assembler, or a surveillance system monitor (*Id.*).

The ALJ next asked the VE to consider a hypothetical that gave full credit to Plaintiff's testimony:

Q: If we full[y] credit the claimant's testimony, would he be able to perform these jobs?

A: Your Honor, the claimant's testimony was that he needed to lie down and rest throughout the day. If that were during the course of an eight-hour workday, it would preclude all competitive employment.

Q: Do these jobs allow a person to lie down, let's say, during the morning, say, for ten or fifteen minutes at lunch time and, again, during the afternoon?

A: Well, an individual would certainly have breaks for 15 minutes once in the morning, once in the afternoon and 30 minutes for lunch. There's, generally, not at an employer's site a location for an individual to go lie down. If he were to, say, go out to his car or make some other accommodation, then that would be allowable.

Q: And if the claimant's testimony is credited, he couldn't perform these jobs[.]

(Tr. 46-47).

### D.  Plaintiff's Claims of Error

#### 1.  The ALJ's Assessment of May 2010 Treatment Notes

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because it is based upon a misreading of May 2010 treatment notes from Plaintiff's treating physician, Scott Monson, M.D.

The portion of the ALJ's decision to which Plaintiff refers reads as follows:

[I]n May 2010, the treating physician indicated that the claimant was doing well except for only occasional aches and pains. This assessment is inconsistent with allegations of disabling pain.

(Tr. 27).[3] Meanwhile, the pertinent portion of the record, dated May 3, 2010, states the following:

> He slipped on a grape at a market two weeks ago, twisting his left knee. Up until then it was doing reasonably well with only occasional aches and pains. It aches constantly now. He is very tender over the medial collateral ligament at the femoral attachment but he has good stability. Drawer sign was negative. He has no effusion. Pivot shift and Lachman's test were negative. He does have some mild crepitus. . . . I have recommended simplye [sic] straight leg raising exercises, use of ice and heat intermittently, oral anti-inflammatories and light use of the knee for the time being. I am going [sic] to see him back here in about five weeks [sic] time[.]

(Tr. 206).

Plaintiff argues that this discrepancy "discredits the ALJ's [] statement that the opinions of Dr. Monson were consistent with those of the evaluating physician, Dr. Banerji" (Dkt. No. 12 at p. 9, citing Tr. 27).[4] But, it is not an opinion: this treatment note in no way purports to describe Plaintiff's functional abilities. Moreover, the ALJ's failure to expressly mention Plaintiff's report

---

[3] The ALJ also mentioned Dr. Monson's May 2010 treatment notes in other portions of his decision, and characterized the treatment notes in the same way:

> In May 2010, the claimant was evaluated for left knee pain after twisting his left knee. The treating physician noted that the claimant was doing well with only occasional aches and pain. X-rays of the left knee were negative. The claimant was advised to rest his left knee.
>
> * * *
>
> The claimant has recovered well from his multiple knee surgeries. In May 2010, the treating physician indicated that the claimant was generally doing well except for occasional aches and pains. The claimant exhibits a normal gait, exhibits good strength in all the extremities, and is neurologically intact.

(Tr. 26).

[4] All page numbers refer to CM/ECF pagination.

of pain following his injury does not render inaccurate the ALJ's acknowledgment that Plaintiff nonetheless reported that he was previously experiencing occasional symptoms.

And, while rendered before Plaintiff's injury, Dr. Monson provided an opinion: after examining Plaintiff on July 15, 2009, Dr. Monson completed a physician's medical report for the Board of Trustees for the Cement Masons' Pension Trust Fund (Tr. 207). He opined that Plaintiff could engage in employment that included a sit/stand option; no kneeling or squatting; no heavy physical labor; and, no climbing of ladders, etc. (*Id.*).

Significantly, this opinion *is* consistent with that of consultative examiner L. Banerji, M.D., which was rendered on July 8, 2010, approximately two months after Plaintiff incurred the May injury that he proffers as evidence of a significant deterioration in his capabilities thereafter.[5] During Dr. Banerji's exam, Plaintiff reported he was able to walk one block; stand for 30 to 45 minutes; climb one flight of stairs; do daily household chores; drive; dress himself; and, take care of his personal needs (Tr. 215).[6] Dr. Banerji diagnosed osteoarthritis of both knee joints, but noted no significant functional limitation orthopedically, and opined that Plaintiff was suitable for eight-hours a day of work, but should avoid lifting heavy weight because of borderline hypertension; and prolonged standing and walking, climbing ladders and scaffolding due to his osteoarthritis (Tr. 216-17). Associated X-rays showed mild degenerative arthritic changes in both knees (Tr. 218). The ALJ's RFC incorporated the limitations involved in both opinions (Tr. 24-25).

---

[5] Moreover, this opinion essentially concedes that Plaintiff was not disabled on the date it was rendered.

[6] Notably, Plaintiff represented a very similar degree of capability during his administrative hearing: he stated that he could walk one block, stand and sit for 30 minutes, and lift and carry 20 to 30 pounds short distances (Tr. 41-42).

-10-

Furthermore, the treatment notes after May of 2010 do not indicate that Plaintiff became further debilitated: as the ALJ mentioned, treatment notes for June 2010 indicate that Plaintiff was "doing pretty well" and did not require pain injections (Tr. 26, 224); notes in December 2010 indicate that Plaintiff reported aching pain at times, but his knees were doing pretty well – his knee did not buckle or lock, and Dr. Monson's exam revealed no crepitus (Tr. 224).

Plaintiff fails to demonstrate why any misreading of Dr. Monson's May 2010 treatment note resulted in an erroneous RFC, particularly in light of the consistency between subsequent treatment notes and Dr. Banerji's findings. Nor is this Magistrate Judge convinced that the ALJ was wrong to conclude that "the treating physician and the conclusion of the evaluating physician are consistent with each other and [] corroborated by the objective medical evidence" (Tr. 27). As such, any error in the ALJ's evaluation of Dr. Monson's May 2010 treatment note is harmless.

### 2. Sentence Six Remand

Nevertheless, as remedy for the ALJ's error – and any resulting confusion it caused this Court – Plaintiff offers a letter from Dr. Monson, dated December 19, 2011, to be included in the record for consideration on remand (Dkt. No. 12 at p. 9). It reads as follows:

> [Plaintiff]'s history of knee complaints continue and at this time I think that it would be difficult for him to work even in a sedentary position. He indicates to me that during the day he will lie down to get off the knee. Even with a sit/stand option it would be difficult for him to perform his duties. It is difficult for him to ambulate long distances to get to and from employment. I would recommend continued treatment with straight leg raises and use of heat modalities throughout the day/This [sic] of could [sic] would preclude him from returning to sedentary activities. It is also important for him to elevate his legs when he is at rest, preferably at waist level or above and he is aware of that.

(Tr. 231).

Sentence six of 42 U.S.C. § 405(g) provides: "The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding" 42 U.S.C. § 405(g). As its text indicates, a sentence six remand is only appropriate where the evidence not before the ALJ is "new" and "material," and that there was "good cause" for not producing the evidence earlier. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986)).

Evidence is "new" only if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Further, "new" evidence must not be merely cumulative of evidence already part of the record. *Wilson v. Comm'r of Soc. Sec.*, No. 10-13828, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011); *see also Carroll v. Califano*, 619 F.2d 1157, 1161 (6th Cir.1980) ("[W]here the issue in question has already been fully considered, further evidence on that point is merely cumulative").

New evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("Material evidence is evidence that would likely change the Commissioner's decision") (citing *Sizemore*, 865 F.2d at 711)). A corollary to this requirement is that "material" evidence be "probative of the claimant's condition for the time period for which benefits were denied." *Wilson*, 2011 WL 2607098, at *6; *see also Wyatt v.*

*Sec'y of HHS*, 974 F.2d 680, 685 (6th Cir.1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is . . . immaterial").

A plaintiff shows "good cause" by providing a reasonable justification for failing to acquire and present the new and material evidence to the ALJ. *Willis v. Sec'y of HHS*, 727 F.2d 551, 554 (1984) (per curiam). Good cause "contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue*, 2009 WL 700057 at *6 (W.D. Ky. Mar.13, 2009) (internal citations omitted).

Here, at a minimum, Plaintiff cannot meet the materiality component. Plaintiff asserts the letter – although "rendered after the date of the ALJ's decision [–] does not represent recognition of new or different problems since the decision date. Instead, it simply provides clarification of the doctor's prior opinion[;] [] the letter could not have been presented at the prior hearing because it had yet to be created . . . because no party could have anticipated the ALJ's misconstruction of [Dr. Monson]'s notes" (Dkt. No. 12 at p. 10). But, as discussed above, any misconstruction of Dr. Monson's notes is immaterial.

Moreover, Dr. Monson's letter – in concluding that Plaintiff could not perform sedentary work – simply purports to resolve issues reserved to the Commissioner; such conclusions are not controlling. 20 C.F.R. § 404.1527(d)(3) ("[w]e will not give any special significance to the source of opinion on issues reserved to the commissioner"); *see also Johnson*, 2013 WL 5613535, at *7 ("[A] treating physician's opinion is only entitled to . . . deference when it is a *medical* opinion. If the treating physician instead submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors – his decision need only explain the consideration given to

the treating source's opinion. The opinion, however, is not entitled to any particular weight." (emphasis in original) (internal citations and quotations omitted)).

Nor, as Plaintiff claims, is the letter truly limited to clarifying what Dr. Monson stated in his May 2010 treatment notes. To the extent that the letter provides new information regarding Plaintiff's need to lie down, Dr. Monson simply repeats Plaintiff's subjective complaints, which are referred to, not as representative of Plaintiff's capabilities in May 2010, but in the present tense: "[h]e indicates to me that during the day he will lie down to get off the knee" (Tr. 231). Plaintiff testified to the same limitation, which, as discussed below, the ALJ failed to discuss in his credibility finding.

### 3. Credibility of Plaintiff's Reported Need to Lie Down

Plaintiff next argues that the ALJ erred in failing to discuss his reasons for rejecting Plaintiff's reported need to lie down throughout the day.

The Sixth Circuit has recently instructed ALJs on how to assess a claimant's credibility:

Credibility determinations regarding the applicant's subjective complaints of pain rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence. In assessing an individual's credibility, the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged . . . . Next, the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions.

*Johnson*, 2013 WL 5613535, at *8 (internal citations and quotations omitted). The ALJ is not required to address every factor; he need only identify specific reasons for his credibility

determination – supported by evidence in the record – and clearly state the weight he gave to Plaintiff's statements and the reasons for that weight. *Potter v. Colvin*, No. 3:12–CV–202, 2013 WL 4857731, at *13 (E.D. Tenn. Sept.11, 2013) (citing SSR 96–7p, 1996 WL 374186, at *2 (1996); *Tell v. Comm'r of Soc. Sec.*, No. 11–15071, 2012 WL 3679138, at *11 (E.D. Mich. July 13, 2012)). Furthermore, "[c]redibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ." *Strevy v. Comm'r of Soc. Sec.*, No. 1:12–cv–634, 2013 WL 54472803, at *8 (W.D. Mich. Sept. 30, 2013) (citing *Gooch v. Sec'y of HHS*, 833 F.2d 589, 592 (6th Cir. 1987)).

The ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause his alleged symptoms (Tr. 25). However, in his evaluation of Plaintiff's subjective complaints, the ALJ did not find his statements concerning the intensity, persistence, and limiting effects of her condition fully credible (*Id.*).

During the hearing, Plaintiff testified that he lies down a couple times a day, for a couple hours at a time, to alleviate the pain in his knees and legs (Tr. 37-38, 40). Were Plaintiff's testimony fully credited, the VE stated that work would be preclusive (Tr. 46-47). The ALJ recited this portion of Plaintiff's testimony (Tr. 25), but – despite the fact that the ALJ elaborated his reasons for finding other aspects of Plaintiff's testimony less than fully credible – he failed to state his reasons for rejecting Plaintiff's reported need to lie down. "While the ALJ's credibility determinations deserve great respect, no credibility determination has been made with regard to this evidence." *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).

Meanwhile, Defendant's argument similarly neglects to mention Plaintiff's alleged need to lie down. Given the VE's testimony, it is crucial that the ALJ give careful consideration to this aspect of Plaintiff's testimony. At best, this Magistrate Judge could assume that the ALJ rejected

this aspect of Plaintiff's testimony because he found Plaintiff's complaints of disabling symptoms otherwise not credible; ultimately, however, the ALJ's reason for rejecting it cannot be determined. *See Rogers*, 486 F.3d at 248 ("The requirement that the Commissioner fully explain his determinations of the claimant's credibility is grounded, at least in part, upon the need for clarity in later proceedings."). As such, the ALJ must address Plaintiff's reported need to lie down on remand.

## IV.     CONCLUSION

Because the ALJ failed to explain his reason for rejecting Plaintiff's reported need to lie down, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and the Commissioner's decision be **REMANDED** for further proceedings consistent with this Report and Recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon  
Mark A. Randon  
United States Magistrate Judge

Dated:  January 22, 2014

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 22, 2014, by electronic and/or ordinary mail.

*s/Eddrey Butts*  
*Case Manager for Magistrate Judge Mark A. Randon*